***E-Filed 06/18/2010***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KENNEDY FUNDING, INC., a New Jersey Corporation,<br><br>        Plaintiff,<br>  v.<br><br>NICOLAS CHAPMAN, an individual; JIREH EDUCATIONAL MINISTRIES, a California non-profit corporation; NEWPORT AVALON INVESTORS, LLC, a California limited liability company; BRIAN D. EVANS, an individual; MANCEBO CORPORATION, a California Corporation; ARNE WAGNER, an individual; LAWRENCE S. THAL, an individual; REDGE MARTIN, an individual; VANGUARD FINANCIAL LTD; and DOES 1 through 50, Inclusive,<br><br>        Defendants.<br>_____/<br>ARNE WAGNER, an individual; LAWRENCE S. THAL, an individual; REDGE MARTIN, an individual,<br><br>        Counterclaimants,<br>  v.<br><br>KENNEDY FUNDING, INC., a New Jersey Corporation,<br><br>        Counterclaim-Defendant. | Case No. C 09-01957 RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS FILED BY DEFENDANTS NICOLAS CHAPMAN, NEWPORT AVALON INVESTORS, LLC, AND JIREH EDUCATIONAL MINISTRIES** |

I.  INTRODUCTION

This case arises from the financing of a troubled real estate development project. Plaintiff's second amended complaint ("SAC"), Doc. No. 47, the operative pleading, alleges: (1) breach of guarantees against Nicolas Chapman ("Chapman"); (2) conversion against Chapman, JIREH Educational Ministries ("JIREH") and Does 1 through 50; (3) breach of contract against Chapman and Newport Avalon Investors, LLC ("Newport"); (4) fraudulent transfer pursuant to California Civil Code sections 3439.04(a)(1), 3439.04(a)(2)(A), 3439.04(a)(2)(B) and 3439.07 against Chapman; (5) conspiracy to commit fraudulent transfers against JIREH and Does 1 through 50; (6) accounting of proceeds from a malpractice judgment pursuant to California Civil Code section 3439.07(a)(3)(C); (7) specific performance of the Deed of Trust and New Loan Deed of Trust and for appointment of receiver against Chapman, Newport and Does 1 through 50; (8) injunctive relief against Chapman, Newport and Does 1 through 50; and (9) judicial foreclosure of covenants in Deed of Trust and New Loan Deed of Trust against Chapman, Newport, Brian Evans, Mancebo Corporation, Vanguard Financial Ltd. and Does 1 through 50.

Although it is not always clear which claims are addressed where in the substantive discussion of the Motion to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6) filed by Chapman and Newport, based upon the "Statement of Issues to be Decided," Chapman and Newport move jointly to dismiss the first, second, fourth, sixth, seventh, eighth and ninth claims. Doc. No. 78.  Again, based upon the "Statement of Issues to be Decided" in its Motion to Dismiss Pursuant to Rule 12(b)(1)(6), JIREH moves to dismiss the second, fifth and sixth claims. Doc. No. 82.  Although Defendants[1] filed two separate motions to dismiss, the issues and discussions in each overlap, and therefore the Court will rule on the motions in a single Order and will address each argument claim by claim.

For the reasons stated below, the motions to dismiss are DENIED as to the first, second, fourth, fifth and ninth claims, and GRANTED WITH LEAVE TO AMEND as to the sixth, seventh and eighth claims.

//

---

[1] For purposes of this Order, "Defendants" refers to Chapman, Avalon and JIREH together.

2

## II. BACKGROUND

According to the SAC, Plaintiff Kennedy Funding, Inc. ("Kennedy") agreed to loan Newport $5,000,000 (the "Loan") on November 24, 2003. The Loan was memorialized by a Loan and Security Agreement (the "LSA") and a Promissory Note (the "Note"), under which Newport agreed to repay the Loan with interest. Newport's obligations to Kennedy under the Loan were secured by a Deed of Trust, Assignment of Leases and Rents and Security Agreement (the "Deed of Trust," together with the LSA and Note, the "Loan Documents"). The Deed of Trust granted Kennedy a first priority mortgage on Newport's real property located in Alameda County, California (the "Property"), the buildings on the Property, the fixtures and personal property located at the Property and any proceeds from the Property.

In connection with the Loan Documents, Chapman executed a Guaranty (the "Guaranty") on November 24, 2003 by which, among other things, Chapman guaranteed performance under the Loan Documents. The Guaranty expressly permitted Kennedy to proceed against Chapman without being required to bring an action against Newport. Chapman is the president and person responsible for Newport, the principal asset of which is the Property. Some of Chapman's family members serve as trustees and/or board members for JIREH, a non-profit organization.

Kennedy alleges that Newport defaulted on its obligations under the Loan Documents in late 2004, and on March 3, 2005 Kennedy issued a Notice of Default. On May 11, 2005, Newport filed for bankruptcy protection under Title 11 of the United States Code. Kennedy, Chapman and Newport resolved their disputes in the bankruptcy proceeding by way of a settlement agreement, which the Bankruptcy Court approved on July 13, 2006 (the "Settlement Agreement"). The terms of the Settlement Agreement were later incorporated by reference into Newport's Amended Chapter 11 Plan of Reorganization, which the bankruptcy court confirmed on October 5, 2006 (the "Confirmed Plan"). Pursuant to the Settlement Agreement and Confirmed Plan, Kennedy retained its security interest as first deed of trust holder on the Property under the Loan Agreements, which still remain enforceable. The Bankruptcy Court eventually dismissed the bankruptcy case on June 1, 2009.

The Settlement Agreement and Confirmed Plan, inter alia, set forth the amount due to Kennedy under the Loan Agreements and provided that the statute of limitations for bringing an action pursuant to the Guaranty would be tolled pending satisfaction of Newport's obligations under the Settlement Agreement. That Agreement also contained provisions for a new loan by Kennedy to Newport of $400,000 to be used for infrastructure improvements on the Property (the "New Loan"). As part of the New Loan, Newport and Kennedy executed a Promissory Note (the "New Loan Note), a Loan and Security Agreement (the "New Loan LSA") and a Deed of Trust, Assignment of Leases and Rents and Security Agreement (the "New Loan Deed of Trust," together with the New Loan Note and New Loan LSA, the "New Loan Documents"). The New Loan Deed of Trust incorporated all prior obligations of Newport to Kennedy, including the amounts owed under the original Loan Documents. In connection with the New Loan Documents, Chapman again executed a guaranty (the "New Loan Guaranty") for Kennedy's benefit, which guaranteed Newport's performance under the New Loan Documents.

Prior to the confirmation of the Confirmed Plan, Chapman obtained a malpractice judgment against his former counsel (the "Malpractice Judgment Proceeds"). A dispute arose over whether the Malpractice Judgment Proceeds belonged to Newport's bankruptcy estate or to Chapman personally, so the Bankruptcy Court ordered that the proceeds be placed in a trust account maintained by Newport's attorney.[2] The Settlement Agreement specified to whom the Malpractice Judgment Proceeds would be allocated and the procedure by which such allocations would be made. Specifically, the Settlement Agreement, in connection with the Serlin Order, the Trust Fund Order and the Confirmed Plan, earmarked no less than $1,000,000 of the Malpractice Judgment Proceeds for Kennedy. Attorney Douglas Allen was required to maintain the proceeds in a trust account pursuant to the Trust Fund Order, and under the Settlement Agreement and Confirmed Plan those funds could be distributed only to Chapman's attorneys, Kennedy, or unsecured creditors. The Settlement Agreement and Confirmed Plan did not allow Chapman to obtain the Malpractice Judgment Proceeds for personal use or to transfer them to JIREH.

---

[2] Newport was initially represented Mark Serlin and later by Douglas Allen. The Bankruptcy Court issued orders pertaining to the Malpractice Judgment Proceeds on May 30, 2006 (the "Serlin Order") and on September 22, 2006 (the "Trust Fund Order").

In February 2009, Mr. Allen informed Kennedy that he had given all of the Malpractice Judgment Proceeds to Chapman, who in turn transferred them to JIREH.  As of the date of the SAC, Chapman and/or JIREH had not returned the Malpractice Judgment Proceeds.  Kennedy's claims entitle it to at least $9,164,286 under the Loan Documents and additional amounts under the New Loan Documents.

Based on these allegations, the SAC states the nine claims for relief listed above. Chapman, Newport and JIREH move to dismiss those claims.  The parties presented oral argument on the motions in this Court on June 3, 2010.

### III.  LEGAL STANDARD

Defendants have filed "Motions to Dismiss Pursuant to Rule 12(b)(1)(6)."  Neither motion includes a discussion of the applicable legal standard, so the Court reads these to be motions to dismiss based on the two separate provisions found in Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the claims asserted.  Fed. R. Civ. P. 12(b)(1).  Plaintiff bears the burden of establishing subject matter jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of America* (1994) 511 US 375, 377.  A motion to dismiss for lack of subject matter jurisdiction may be made on the grounds that the lack of jurisdiction appears from the "face of the complaint," or may be based on extrinsic evidence apart from the pleadings.  *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003).  "With a factual Rule 12(b)(1) attack, [ ] a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment."  *White v. Lee*, 227 F3d 1214, 1242 (9th Cir. 2000).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Hence, the issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but

whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citations omitted). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Bell Atlantic Corp. v. Twombly*, 550 US 544, 570 (2007); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 US at 570). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Claims grounded in an allegation of fraud are subject to Rule 9(b), which provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Rule 9(b) applies equally to federal claims as it does to state-law causes of action before a federal court. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir. 1985)).

A plaintiff seeking to state a claim for fraud must also plead knowledge of falsity, or scienter. *See In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir.1994). The requirement for pleading scienter is less rigorous than that which applies to allegations regarding the

"circumstances that constitute fraud" because Rule 9(b) states that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Nonetheless, plaintiffs must still satisfy the requirements of Rule 8; therefore, conclusory averments of scienter, without reference to a factual context, are insufficient and not entitled to be presumed true. *Iqbal*, 129 S. Ct. at 1951 (citing *Twombly*, 550 US at 554-555).

### III. DISCUSSION

Both motions raise two threshold issues. First, Defendants make a number of references to Plaintiff's first amended complaint ("FAC"), apparently for the proposition that certain allegations in the FAC are inconsistent with those in the SAC. Doc. No. 78 at 4, Doc. No. 82 at 6. An amended complaint supersedes a previous complaint and renders the previous complaint of no legal effect, unless the amended complaint incorporates by reference portions of the prior pleading. *Doe v. Unocal Corp.* (C.D. Cal 1998) 27 F. Supp. 2d 1174, 1180, aff'd (9th Cir. 2001). While the Court must accept as true all material allegations in a complaint, the Court is not required to accept as true allegations in an amended complaint that contradict allegations made in an earlier complaint, and may strike those inconsistent allegations. *See Ellingson v. Burlington Northern, Inc.*, 653 F.2d 1327, 1329-1330 (9th Cir. 1981) (overruled on other grounds). In the FAC, Kennedy avers that "Chapman, directly or indirectly, controls JIREH," (FAC ¶ 3), that Newport "is an entity and possibly related entity to Chapman and/or JIREH," and that "Chapman and Allen admitted Chapman's relation to JIREH." FAC ¶ 31. In the SAC, Kennedy simply alleges that "some of Chapman's family members serve as trustees and/or board members for JIREH" SAC ¶ 4. Although the nature of the relationship between Chapman and JIREH may be an issue requiring resolution at a later stage in the proceedings, at this stage there is no inconsistency that would require striking any portion of the SAC.

Second, Defendants request the Court to take judicial notice of a number of exhibits attached to the FAC. Doc. No. 78 at 4, Doc. No. 82 at 6. However, judicial notice is limited to facts not subject to reasonable dispute and either generally known in the community or capable of accurate and ready determination by reference to sources whose accuracy cannot be

reasonably questioned.[3]  Fed. R. Evid. 201; *see Lee v. City of Los Angeles*, 250 F.3d 668, 688-690 (9th Cir. 2001).  Additionally, in deciding a motion to dismiss under Rule 12(b)(6), courts may consider documents attached to the complaint and incorporated therein by reference, *Kaufman and Broad-South Bay v. Unisys Corp.,* 822 F. Supp. 1468 (N.D. Cal. 1993) (overruled on other grounds), as well as documents referred to in the complaint and whose authenticity is not in question.  *Townsend v. Columbia Operations,* 667 F.2d 844, 848-49 (9th Cir.1982).  Defendants have provided no authority for the proposition that exhibits attached to a previous complaint, but neither attached to nor referenced in an amended complaint, may be considered in a motion to dismiss under Rule 12(b)(6).  In ruling on Defendants' motions to dismiss for failure to state a claim, then, the Court considers only the SAC and those documents attached thereto.

A.  Jurisdiction

The Court has subject matter jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds the value of $75,000.  28 U.S.C. § 1332(a)(1).  The SAC gives the Court subject matter jurisdiction here because it alleges, and Defendants do not dispute, that the Plaintiff is a New Jersey corporation, that the Defendants are each citizens of California and that the amount in controversy exceeds $75,000.  SAC ¶¶ 1-10, 12.

Although the basis for their motions under Rule 12(b)(1) are not clearly developed, Defendants maintain that the Court lacks subject matter jurisdiction under theories of collateral estoppel and lack of standing.  In particular, the motions to dismiss argue,

> "Plaintiff lacks standing to bring an action regarding possessory claims to the funds, as it is the bankruptcy trustee who had exclusive standing to pursue the funds.  Plaintiff attempts to enforce a bankruptcy court order through this Court, which lacks jurisdiction to do so, as it constitutes an improper appeal of the denial of the bankruptcy Court of plaintiff's application for an order to show cause, and the finding by the bankruptcy trustee that the funds are not part of the estate, and the corresponding dismissal of the bankruptcy case following such a finding."

Doc. No. 82 at 2; *see also* Doc. No. 78 at 5.

---

[3] While Defendants refer to an Exhibit L of the FAC, no such exhibit appears to be attached to that pleading.  Defendants apparently refer to an exhibit that was part of an erroneous entry, *see* Doc. No. 8, and request that the Court consider a transcript from a bankruptcy court proceeding, a letter and a declaration of counsel.  None of these fall within Fed. R. Evid. 201 and judicial notice of these materials therefore is not appropriate.

1  The question of standing may properly be considered on a motion to dismiss for lack of
2  subject matter jurisdiction. *Warren*, 328 F.3d at 1140. A bankruptcy court may have jurisdiction
3  over all proceedings arising under bankruptcy law, including disposition of a debtor's property.
4  28 U.S.C. 157; *see also*, *Celotex Corp. v. Edwards*, 514 US 300, 307 (1995). While Defendants
5  maintain that any property in a debtor's estate is under "exclusive control of the trustee" (Doc.
6  No. 82 at 6), the Ninth Circuit has held that "the Code empowers a bankruptcy court to fashion
7  an order giving a chapter 7 trustee *concurrent, if not exclusive*, control over monies in which
8  both the debtor and the estate hold an interest." *In re White*, 389 B.R. 693, 709 (9th Cir. 2008)
9  (emphasis added). Here, the SAC alleges that the bankruptcy case was dismissed in 2009. SAC
10 ¶ 26. Moreover, the SAC never alleges that the Malpractice Judgment Proceeds were under the
11 exclusive control of Newport's bankruptcy estate, nor does any of the evidence before the Court
12 at this time suggest that this was the case. Rather, the SAC alleges that Kennedy has an
13 ownership interest in the Malpractice Judgment Proceeds, as well as rights under the Loan
14 Documents, Guaranty, New Loan Documents, New Loan Guaranty, Settlement Agreement and
15 Confirmed Plan. SAC ¶¶ 15, 25, 40, 44, 46, 63. Therefore, the Court finds that Plaintiff has
16 standing to pursue its claims here.

17 "Collateral estoppel, also termed issue preclusion, generally applies when an issue finally
18 decided in an earlier action is involved in a second action, and the parties involved in the second
19 action are bound by the first decision." *Luben Industries, Inc. v. U.S.*, 707 F.2d 1037, 1039 (9th
20 Cir. 1983). While Defendants argue in their motions to dismiss that the Court is collaterally
21 estopped by a previous bankruptcy court ruling, neither the SAC nor any of the evidence before
22 the Court at this time suggests that any of the claims in the SAC have been previously
23 adjudicated.

24 B.  <u>Breach of the Guaranty and New Loan Guaranty (First Claim; Against Chapman)</u>

25 In California, a complaint for breach of guaranty requires: (1) the existence of a contract;
26 (2) plaintiff's performance or excuse for non-performance under the contract; (3) defendant's
27 breach under the contract; and (4) damages. *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App.
28 3d 887, 913 (2nd Dist., 1992); *see also*, *Bank of Sierra v. Kallis*, No. CIV F 05-1574, 2006 WL

3513568, at *7 (E.D. Cal. Dec. 6, 2006) (breach of a written guaranty is a contractual cause of action that requires proof of the same elements as breach of contract).

In its SAC, Kennedy avers each of the elements required for a breach of guaranty.  First, Plaintiff alleges the existence of the Guaranty and the New Loan Guaranty, and attaches copies of those documents to the SAC.  SAC ¶¶ 15-16, 25, 28, 40, 44.  Second, the SAC alleges that Kennedy performed its obligations connected to the Guaranty and New Loan Guaranty, as specified in the Loan Documents, the Settlement Agreement, the Confirmed Plan and the New Loan Documents, when it loaned Newport the money.  SAC ¶ 15, 28, 38-40, 63.  Third, the SAC makes a number of allegations that the Guaranty and the New Loan Guaranty have been breached because Plaintiff has not received the amounts owed to it under these agreements.  SAC ¶ 24, 46-49, 52, 63 and 65.  And fourth, Plaintiff alleges damages from these breaches, including amounts owed of at least $9,164,286.  SAC ¶ 50, 59, 64.

In the motion to dismiss, Chapman argues that Plaintiff's rights under the Loan Documents and Guaranty were modified and impaired by the Confirmed Plan because it discharged the original debt owed by Newport to Plaintiff.  Doc. No. 78 at 3.   The linchpin of this argument appears to be a provision in the bankruptcy code, which states:

> Except as provided in subsections (d)(2) and (d)(3) of this section and *except as otherwise provided in the plan* or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(c) (emphasis added).  The Confirmed Plan provides that Kennedy's secured claim against Newport "is impaired under the [Confirmed] Plan."  SEC Exhibit J at 5.  The question, then, becomes whether Plaintiff sufficiently alleged that the terms of the Confirmed Plan were such that the Property was *not* free and clear of all pre-confirmation claims.

The SAC alleges that "Kennedy retained its security interest as first deed of trust holder on the Property and under the Loan Agreements, which still remain enforceable."  SAC ¶ 28.  While "conclusory allegations of law and unwarranted inferences" will not defeat a motion under Rule 12(b)(6), *Epstein*, 83 F.3d at 1140, the Court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-

1  moving party. *Twombly*, 550 US at 584.  Here, Plaintiff has pointed to a number of provisions in
2  the Settlement Agreement, which was incorporated into the Confirmed Plan,[4] suggesting that the
3  Loan Documents and Guaranty remain enforceable.  First, the SAC alleges that the Settlement
4  Agreement tolled the statute of limitations for commencing litigation under the Guaranty,
5  thereby making the Guaranty an independent obligation and enforceable after the Settlement
6  Agreement.[5]  SAC ¶ 31.  And second, both the Settlement Agreement and the Confirmed Plan
7  specify that "Kennedy has a secured senior claim, which is secured by the first priority mortgage
8  lien against the Property."  SAC Exhibit I at 1-2, Exhibit J at 1-2.

9  Whether Plaintiff's interpretation of the Settlement Agreement and Confirmed Plan is
10 correct, such that its interests under the Loan Documents and Guaranty remain enforceable after
11 the Settlement Agreement, is a factual determination based upon the documents and the
12 circumstances surrounding the alleged breach.  The issue on a motion to dismiss, however, is not
13 whether a claimant will prevail, but rather whether the claimant is entitled to offer evidence to
14 support its claims. *Jamco Dev. Corp.*, 108 F.3d at 249.  On that basis alone, the motion to
15 dismiss count one as to the Guaranty must be denied.  Moreover, even if the Court were to find
16 that Newport had been discharged of its obligations under the Loan Documents pursuant to the
17 Confirmed Plan, it is well well-established that the discharge of the principal debtor in
18 bankruptcy will not discharge the liabilities of a guarantor. *See* 11 U.S.C. § 524(e); *see also, Star*
19 *Phoenix Min. Co. v. West Bank One*, 147 F.3d 1145, 1147 fn. 2 (9th Cir. 1998).  Accepting the
20 SAC's material allegations as true, then, Plaintiff has presented a cognizable legal theory and has

---

[4] Section IV of the Confirmed Plan also provides that "[t]o the extent there is any discrepancy between the [Confirmed] Plan and the [Settlement] Agreement, the [Settlement] Agreement will control."  SAC Exhibit J at 5.
[5] Section 7 of the Settlement Agreement provides:

> Kennedy hereby agrees that, so long as a Confirmation Order is entered and Newport satisfies all of its obligations under the Modified Plan and this Settlement Agreement, Kennedy will forebear from commencing or continuing litigation against Chapman related to his obligations to Kennedy under the Guaranty dated November 24, 2003, executed by Chapman in favor of Kennedy; it being further understood that by operation of this Settlement Agreement, Chapman hereby agrees that the statute of limitations within which such litigation must be commenced shall be tolled pending the satisfaction in full of Newport's obligations under the Modified Plan and this Settlement Agreement.

1 presented sufficient factual allegations to state a plausible claim for relief for breach of the
2 Guaranty.  *See Iqbal*, 129 S. Ct. at 1949; *Pacifica Police Dep't*, 901 F.2d at 699

3       The motion to dismiss also argues that there is no "claim on the guarantee of the new
4 loan, as no breach of the new loan is alleged."  Doc. No. 78 at 4.  Chapman is wrong, though,
5 because the SAC clearly alleges that "Newport has not performed under the Confirmed Plan,
6 Settlement Agreement, Loan Documents, Deed of Trust, New Loan Documents and New Loan
7 Deed of Trust and has breached these documents" and that "Chapman has not performed under
8 the Settlement Agreement, Guaranty and New Loan Guaranty and has breached these
9 documents."  SAC ¶¶ 47-48.  Whether or not an actual breach occurred under the New Loan
10 Documents and the New Loan Guaranty also requires a complex factual inquiry into those
11 documents and the circumstances surrounding the alleged breach.  So again, accepting the
12 material allegations as true, Plaintiff has presented a plausible claim for relief for breach of the
13 New Loan Guaranty.  *See Iqbal*, 129 S. Ct. at 1949.  Therefore, the motion to dismiss count one
14 is denied.

15 C.      <u>Conversion of Malpractice Judgment Proceeds (Second Claim; Against Chapman, JIREH and Does 1 through 50)</u>
16

17       The elements for a claim of conversion are: (1) plaintiff's ownership or right to
18 possession of the property at the time of the conversion; (2) defendant's conversion by a
19 wrongful act or disposition of property rights; and (3) damages.  *Fed. Agr. Mortg. Corp. v. It's A*
20 *Jungle Out There, Inc.*, No. C 03-3721, 2005 WL 3325051 at *23 (N.D. Cal. Dec. 7, 2005)
21 (citing *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 451 (3rd Dist., 1997)).  To prove
22 ownership, a plaintiff need not show legal title to or absolute ownership in the property; plaintiff
23 need only establish that it is "entitled to immediate possession at the time of conversion."
24 *Farmers*, 53 Cal. App. 4th at 452 (citations omitted).  While a mere contractual right of payment,
25 without more, is insufficient to establish ownership, a right to immediate possession can arise
26 where there is an equitable lien.  *Id*. at 454-457 (insurance policy language did not create an
27 equitable lien sufficient to support a conversion claim); *see also, Plummer v. Day/Eisenberg,*
28 *LLP*, 108 Cal. Rptr. 3d 455, 461 (4th Dist., 2010) (attorney's conversion cause of action against

former client's new attorneys survived summary judgment due to alleged lien on settlement proceeds). Equitable liens can arise from a contract that reveals the intent to charge a particular property with a debt. *Farmers*, 53 Cal. App. 4th at 453-454 (citing 53 C.J.S. Liens, § 5, at pp. 463-464). The question of whether a lien has actually been created under a contract depends upon the facts of the case. *Id*. To prove a defendant's wrongful act, a plaintiff need only demonstrate that the defendant assumed control or ownership over the property, or that the defendant has applied the property to his own use. *Id*. at 451-452.

Here, Plaintiff has adequately pled all elements for a conversion claim. First, Plaintiff alleges that it is the rightful owner of at least $1,000,000 of the Malpractice Judgment Proceeds, which were earmarked under the Settlement Agreement, the Serlin Order, the Trust Fund Order and the Confirmed Plan. SAC ¶ 36-37, 46, 56. Second, the SAC alleges that Chapman and JIREH converted the proceeds when Chapman transferred them to JIREH for their own use. *Id*. at ¶¶ 46, 57. And third, the SAC states that Plaintiff has been damaged by the conversion because it is owed money under the Loan Documents and New Loan Documents. *Id*. at ¶¶ 50, 59.

Defendants argue that Plaintiff has no possessory interest in the Malpractice Judgment Proceeds, but rather has only a contractual right under the Settlement Agreement and Confirmed Plan. Doc. No. 78 at 6-7, Doc. No. 82 at 7-8. Defendants reiterate this argument in their reply briefs, asserting that, "In order to embellish their [sic] contract claim, Plaintiff, for the first time [in the moving papers], claims an equitable lien on the funds." Doc. No. 96 at 3, Doc. No. 97 at 4. Defendants seem to have overlooked paragraphs 46 and 56 of the SAC, however, which Plaintiff referenced in its opposition and which say, "Kennedy possesses an equitable lien on the Malpractice Judgment Proceeds by virtue of the Settlement Agreement, the Serlin Order, the Trust Fund Order, the Confirmed Plan and Plaintiff's Funding of the New Loan." Because the existence of an equitable lien pursuant to a contract is a factual determination, and because Plaintiff has alleged the contractual arrangements that gave rise to the equitable lien in this case, Plaintiff has sufficiently alleged a possessory interest in the Malpractice Judgment Proceeds.

As can best be discerned, Defendants, in a somewhat confused discussion, also argue that Plaintiff lacks a possessory interest in the Malpractice Judgment Proceeds under a theory of collateral estoppel, asserting that the bankruptcy court has already ruled that "Chapman is the rightful owner of the funds." Doc. 78 at 6. Nothing in the pleadings or in the evidence before the Court, however, allows the Court to rule at this time that, as a matter of law, the bankruptcy court has previously adjudicated the claim of conversion or that Plaintiff's assertion of its ownership interest in the Malpractice Judgment Proceeds has been collaterally estopped.

Accepting the SAC's material allegations as true, then, Plaintiff has presented a cognizable legal theory and has presented sufficient factual allegations to state a plausible claim for relief for conversion of the Malpractice Judgment Proceeds. *See Iqbal*, 129 S. Ct. at 1949; *Pacifica Police Dep't*, 901 F.2d at 699. Therefore, the motions to dismiss count two are denied.

D.  Fraudulent Transfer (Fourth Claim; Against Chapman)

Plaintiff alleges that Chapman committed a fraudulent transfer of the Malpractice Judgment Proceeds pursuant to California Civil Code sections 3439(a)(1), 3439.04(a)(2)(A) and 3439.04(a)(2)(B). Under these statutes, a transfer of an asset is fraudulent as to a creditor if, (1) the debtor made the transfer with "actual intent to hinder, delay, or defraud the creditor" or (2) the debtor made the transfer "without receiving reasonably equivalent value for the transfer or obligation, and the debtor either (a) [w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction [or] (b) [i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due." Cal. Civ. Code §§ 3439(a)(1), 3439.04(a)(2)(A), 3439.04(a)(2)(B).

As set forth above, claims grounded in an allegation of fraud are subject to Federal Rule of Civil Procedure 9(b), which provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Under California law, actual intent to defraud by a debtor can be found by circumstantial evidence, based upon eleven different factors. Cal. Civ. Code § 3439.04(b); *see also*, *Filip v. Bucurenciu,* 129 Cal. App. 4th 825, 834 (3rd Dist. 2005). Constructive intent to defraud exists "if the debtor made the

14

1  transfer… without receiving a reasonably equivalent value in exchange for the transfer… and the
2  debtor was insolvent at that time." Cal. Civ. Code § 3439.05; *see also*, *U.S. v. Secapure*, No. C
3  07-1050, 2008 WL 820719 at *6 (N.D. Cal. Mar. 26, 2008).

4  Here, the SAC's allegations are specific enough to satisfy the requirements of Rule 9(b)
5  for a claim of fraudulent transfer. The circumstances of "who, what, where, when, and how" the
6  fraud occurred are alleged with particularity; the SAC alleges that Kennedy is a creditor of
7  Chapman (SAC ¶ 68), that Chapman transferred the Malpractice Judgment Proceeds with actual
8  intent to hinder Kennedy (SAC ¶¶ 69-70), that Chapman did not receive reasonably equivalent
9  value from JIREH (SAC ¶ 71) and that Chapman was insolvent at the time of the transfer (SAC ¶
10 71).

11 Chapman moves to dismiss claim four on the basis that the Malpractice Judgment
12 Proceeds were owned by Chapman rather than Kennedy, and that when the proceeds were
13 transferred to JIREH they were transferred to a "Chapman entity" in accordance with the
14 Settlement Agreement and Confirmed Plan. Doc. No. 78 at 8. In his reply brief, Chapman also
15 cites *Secapure*, which denied a claim for fraudulent transfer after the court found that the alleged
16 transaction had not made the debtor insolvent. 2008 WL 820719 at *6.

17 Notwithstanding Chapman's arguments, whether Chapman had sufficient assets to cover
18 his obligations under the Settlement Agreement, as well as whether Plaintiff "owned" the
19 Malpractice Judgment Proceeds or whether the transfer to JIREH was in accordance with the
20 Settlement Agreement, are certainly factual determinations that cannot be made at a motion to
21 dismiss. Moreover, *Secapure* is factually distinguishable from the case at bar because the court
22 there was ruling on a motion for summary judgment and not a motion to dismiss. *Id*. Accepting
23 the SAC's material allegations as true, then, Plaintiff has presented a cognizable legal theory and
24 has presented sufficient factual allegations to state a plausible claim for relief for fraudulent
25 transfer of the Malpractice Judgment Proceeds. *See Iqbal*, 129 S. Ct. at 1949; *Pacifica Police*
26 *Dep't*, 901 F.2d at 699.
27 //
28

15

E.   Conspiracy to Commit Fraudulent Transfer (Fifth Claim; Against JIREH and Does 1 through 50)

JIREH moves to dismiss the fifth claim on the basis that Chapman possesses a confidential relationship with JIREH as a corporate agent and because there is no separate cause of action for conspiracy. Doc. No. 82 at 4-5. As to the first argument, JIREH submits that "the SAC a [sic] paragraph 4 literally states that JIREH has a confidential relationship with persons in who [sic] Mr. Chapman also has a confidential relationship." Doc. No. 96 at 6. This is inaccurate. The SAC alleges that some of Chapman's family members serve as trustees and/or board members for JIREH. SAC ¶ 4. It does not allege that Chapman is a corporate agent of JIREH or that the two have a confidential relationship. Moreover, notwithstanding the fact that JIREH cites to specific pages in the Settlement Agreement, the Court did not find anything in that document defining JIREH as a "Chapman entity" or establishing Chapman as a corporate agent of JIREH.[6]

To support its argument that no separate cause of action exists for conspiracy, JIREH cites *DeHorney v. Bank of America Nat. Trust and Sav. Ass'n*, 879 F.2d 459 (9th Cir. 1989). While JIREH is literally correct that the court in *Dehorney* said there is "[n]o cause of action exists for a conspiracy itself," JIREH's interpretation of this phrase is misplaced because it does not include the court's full holding. The complete holding in *Dehorney* provides that "'[n]o cause of action exists for a conspiracy itself; the pleaded facts must show something which, without the conspiracy, would give rise to a cause of action.'" 879 F.2d at 464 (citations omitted). In other words, a claimant must allege that the defendant was part of a conspiracy to commit some other wrong. Here, Plaintiff alleges that JIREH was part of a conspiracy to transfer fraudulently the Malpractice Judgment Proceeds. SAC ¶¶ 77-81. These allegations present a cognizable legal theory and state a plausible claim for relief for conspiracy to commit

---

[6] As previously noted, although the FAC avers that Chapman, directly or indirectly, controls JIREH, there are no inconsistencies between the FAC and SAC that require striking any of the allegations. *See Ellingson*, 653 F.2d 1327 at 1329-1330. Moreover, even were the Court to strike any allegations in the SAC, the averments do not support a finding at this stage that JIREH is a Chapman entity.

16

CASE NO. C 09-1957 RS
ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

fraudulent transfers. *See Iqbal*, 129 S. Ct. at 1949; *Pacifica Police Dep't*, 901 F.2d at 699. Therefore, the motion to dismiss count four is denied.

F. <u>Accounting, Specific Performance and Injunctive Relief (Sixth, Seventh, and Eighth Claims)</u>

Plaintiff's claims for accounting of the Malpractice Judgment Proceeds, specific performance and injunctive relief are more appropriately characterized as forms of relief than independent claims. *See, e.g., Santos v. Countrywide Home Loans*, No. Civ. 2:09-02642, 2009 WL 3756337 at *5 (E.D. Cal. Nov. 6, 2009) ("declaratory and injunctive relief are not independent claims, but rather they are forms of relief") (citing *McDowell v. Watson,* 59 Cal.App.4th 1155, 1159, 69 Cal.Rptr.2d 692 (1997)); *Harara v. ConocoPhillips Co.,* 377 F. Supp. 2d 779, 796 (N.D. Cal. 2005) ("[s]pecific performance is a form of contractual relief, not an independent claim.") (citing 5 Witkin, *California Procedure, Pleading* § 740 (4th ed. 1997)); *Williams v. ARC Music Corp.*, 121 F.3d 720 (9th Cir. 1997) ("[t]here is no independent cause of action for appointment of a receiver.") (citing Witkin, *California Procedure 4th,* Prov. Remedies, §§ 416, 420); (*Borrego v. BMG U.S. Latin*, 92 Fed. App'x 572, 573 (9th Cir. 2004) (accounting is not an independent claim) (citing *Hillman v. Stults,* 263 Cal. App. 2d 848, 876 (1968)).

To assert a right to accounting, Plaintiff must demonstrate either "(1)… the relationship of the parties created an equitable duty to account…; (2)… the complicated nature of accounts would make it difficult, if not impossible, for a jury to unravel the numerous transactions; [or] (3)… an accounting on an otherwise legal claim [is] incidental to a demand for an injunction or other equitable relief." *Towers v. Titus*, 5 B.R. 786, 793 (N.D.Cal.1979) (citing 9 Wright & Miller § 2310). To plead a claim for specific performance, Plaintiff must demonstrate that it has specific performance rights under the Deed of Trust or New Loan Deed of Trust. *Harara,* 377 F. Supp. 2d at 796. To prove the need for a receiver, Plaintiff must establish a number of factors that establish that a receiver is absolutely necessary. *Canada Life Assur. Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009). To satisfy a claim for injunctive relief, Plaintiff must establish a

tort or other wrongdoing as well as irreparable injury. *Brownfield v. Daniel Freeman Marina Hosp.*, 208 Cal. App. 3d 405, 410 (1989).

A dismissal of the sixth, seventh and eighth "claims" will not, in fact, preclude Plaintiff's ability to recover on theories of accounting, specific performance/appointment of a receiver or injunctive relief; Plaintiff could potentially show the existence of the elements necessary to plead these claims in connection with several of its other claims, such as breach of guarantees, conversion, breach of contract or fraudulent transfer. Moreover, dismissal of separate claims for accounting, specific performance and injunctive relief at the pleading stage will serve the felicitous purpose of narrowing the action, by eliminating superfluous or unnecessary claims and concentrating the parties' (and the Court's) energies on the essence of the underlying dispute. For this reason, Defendant's motion to dismiss Plaintiff's sixth, seventh and eighth claims will be granted with leave to amend to the extent that such remedies can be included where appropriate in the prayer for relief section of the complaint.

G.  <u>Judicial Foreclosure (Ninth Claim; Against Chapman, Newport, Evans, Mancedo, Vanguard and Does 1 through 50)</u>

Although judicial foreclosure is a remedial action that a debtor may pursue under California law, *see* Cal. Code Civ. Proc. § 726, California courts routinely enter judgment on actions for judicial foreclosure. *See, e.g., O'Neil v. General Security Corp.*, 4 Cal. App. 4th 587, 596 (1992); *California Golf, L.L.C. v. Cooper*, 163 Cal.App.4th 1053, 1065 (2008). Moreover, the Court has not found any cases at the state or federal level that deem judicial foreclosure a remedy rather than an independent cause of action. Kennedy avers in the SAC that it has claims in the Property by way of the Deed of Trust and New Loan Deed of Trust that are senior to those of Chapman, Newport, Evans, Mancedo, Vanguard and Does 1 through 50. SAC ¶ 97. The SAC further alleges that Kennedy's demands for payment have failed. SAC ¶ 98. Based on these allegations, Kennedy presents a plausible claim for relief for judicial foreclosure. *See Iqbal*, 129 S. Ct. at 1949. Therefore, the motion to dismiss count nine is denied.

V.  CONCLUSION

For the reasons stated above, motions to dismiss are therefore DENIED as to the first, second, fourth, fifth and ninth claims, and GRANTED WITH LEAVE TO AMEND as to the sixth, seventh and eighth claims.

IT IS SO ORDERED.

Dated: 06/18/2010

RICHARD SEEBORG
UNITED STATES MAGISTRATE JUDGE