*E-Filed 11/1/10*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KENNEDY FUNDING, INC., a New Jersey Corporation,<br><br>    Plaintiff,<br> v.<br><br>NICOLAS CHAPMAN, an individual; JIREH EDUCATIONAL MINISTRIES, a California non-profit corporation; NEWPORT AVALON INVESTORS, LLC, a California limited liability company; BRIAN D. EVANS, an individual; MANCEBO CORPORATION, a California Corporation; ARNE WAGNER, an individual; LAWRENCE S. THAL, an individual; REDGE MARTIN, an individual; VANGUARD FINANCIAL LTD.; and DOES 1 through 50, Inclusive,<br><br>    Defendants.<br>_____/<br><br>NEWPORT AVALON INVESTORS, LLC, a California limited liability company<br><br>    Counter-Claimant,<br> v.<br>KENNEDY FUNDING, INC., a New Jersey corporation,<br><br>    Counterclaim-Defendant.<br>_____/ | Case No. C 09-01957 RS<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## I.  INTRODUCTION

This case involves claims and counter-claims arising from the financing of a real estate development project.  At issue here are the counter-claims of defendant Newport Avalon Investors, LLC ("Newport") against plaintiff and counter-defendant Kennedy Funding, Inc. ("Kennedy").[1] Newport asserts eight counter-claims against Kennedy for its conduct related to various lending agreements.  Kennedy moves to dismiss counter-claims two through eight under Federal Rule of Civil Procedure 12(b)(6).  The motion was heard in this Court on October 7, 2010.  For the reasons stated below, the motion is granted with leave to amend all claims except false light, which is dismissed without leave to amend.

## II.  BACKGROUND

The events giving rise to this litigation began in October 2003, when Newport obtained a loan for $5.4 million from Kennedy in order to acquire real property in Pleasanton, California.[2] According to the cross-complaint, the original loan offered by Kennedy in its letter of intent included a loan fee of 4%.  Newport relied upon the terms until, on the "eve of closing," Kennedy increased the loan fees, which decreased the loan principal.  Newport utilized the proceeds to purchase approximately fifty-one acres for a planned subdivision.  As part of the project, Newport claims that Kennedy "purported to help" it obtain a performance bond.  Newport contends that the bond premium was $15,747, but it was charged $100,000.  It further alleges that Kennedy and Keeton Construction Co. ("Keeton") presented false documents to the County of Alameda and Federal Insurance Company in obtaining the bond.  Keeton, a non-party to the suit, is described by Newport as "a shill contractor."

---

[1]  Kennedy initiated this suit against defendants Nicholas Chapman, Jireh Educational Ministries, Newport, and several other individuals to recover funds allegedly owed to it under a settlement agreement reached as part of Newport's bankruptcy proceeding.  Nicholas Chapman and Newport jointly filed a motion to dismiss and Jireh Educational Ministries also filed a separate motion to dismiss.  On June 18, 2010, this Court issued its order granting in part and denying in part the motions.  *See Kennedy Funding, Inc. v. Chapman*, No. C 09-01957 RS, 2010 U.S. Dist. LEXIS 60475 (N.D. Cal. June 18, 2010).  Subsequently, Newport answered the complaint and raised the counter-claims at issue here.

[2]  Additional factual background is contained in the Court's prior order, 2010 U.S. Dist. LEXIS 60475, at *1-3.

According to Kennedy, by late 2004, Newport was in default on its loan obligations. Newport subsequently filed for bankruptcy protection under Title XI of the United States Code. In May 2006, while the bankruptcy proceeding was ongoing, Newport and Kennedy entered into a settlement, which Newport refers to as "the agreements." These agreements were incorporated into the bankruptcy plan. On October 5, 2006, Newport emerged as a reorganized debtor under the plan as confirmed by the bankruptcy court. As part of their agreements, Kennedy was to fund a second loan to Newport for $400,000. The purpose of the second loan was to enable Newport to make improvements to the Pleasanton subdivision. Newport contends that Kennedy was late in funding the loan by seven months, which has affected Newport's ability to sell the subdivision lots.

In more recent events, Newport claims that in February 2009, Kennedy sent agents to the subdivision who made false statements about Newport's ownership of the property. The agents allegedly told "local members of the real estate professional community" that the property had been foreclosed and that Newport did not have title to convey. Based on these contentions, Newport brought eight counter-claims for: (1)breach of contract; (2) declaratory relief under 28 U.S.C. § 2201; (3) RICO violation; (4) fraud; (5) defamation; (6) false light; (7) interference with prospective economic advantage; and (8) unfair business practices. Kennedy moves to dismiss all but the breach of contract counter-claim for failure to state a claim upon which relief can be granted.

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must present "a short and plain statement of the claim" demonstrating that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). If the complaint does not meet this standard, the defendant may move to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), dismissal is appropriate if either the claimant does not raise a cognizable legal theory or otherwise fails to allege sufficient facts to support a cognizable claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Thus, while a legally sufficient complaint does not require "detailed factual allegations," it must contain more than "unadorned" assertions of harm or bare legal conclusions without factual support. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a Rule 12(b)(6) motion to dismiss, all

material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Furthermore, Federal Rule of Civil Procedure 9(b) requires that "[in] allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must plead the "who, what, where, when, and how" of the claimed misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Defendants must be provided notice of "particular misconduct," so that they may "defend against the charge" instead of generally deny wrongdoing. *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citations omitted).

## IV.  DISCUSSION

Kennedy moves to dismiss counter-claims two through eight for failure to state a claim upon which relief can be granted. In its motion to dismiss, Kennedy briefly states that the counter-claims also should be dismissed for lack of subject matter jurisdiction and refers to Newport's lack of standing, but it does not develop these arguments. At oral argument on this motion, Kennedy confirmed that it only moves to dismiss pursuant to Rule 12(b)(6).

A.   <u>Declaratory Relief</u>

In counter-claim two, Newport seeks a declaratory judgment that Kennedy breached the bankruptcy plan and "related agreements." In the case of an actual controversy, the Court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. Counter-claim one, however, already seeks relief for Kennedy's alleged breach of "the agreements" incorporated into the bankruptcy plan. Specifically, Newport contends that Kennedy's delay in funding the post-bankruptcy loan by seven months constitutes breach of their agreements. In counter-claim two, Newport states its belief that Kennedy denies the breach alleged in counter-claim one and therefore seeks declaratory judgment of the breach. Counter-claim two merely seeks adjudication of the same issues raised in counter-claim one and therefore does not represent an independent claim. Therefore, the motion to dismiss is granted without leave to amend.

B.     RICO

In its third counter-claim, Newport alleges that Kennedy committed a RICO violation by engaging in a "fraudulent criminal enterprise . . . to manipulate prospective borrowers out of funds and property." Newport fails to specify the subsection of 18 U.S.C. section 1964 under which it brings its claim. The parties apparently direct their arguments, however, to whether Newport has alleged the elements of a section 1964(c) claim. Under this subsection, the claimant must allege: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, (5) that caused injury to its business or property. *Ove v. Guinn*, 264 F.3d 817, 825 (9th Cir. 2001). According to Newport, Kennedy changed the terms of the first loan on the "eve of closing." It increased the loan fees, which decreased the loan principal. Kennedy "purported to assist" Newport in obtaining a performance bond for its development project. Newport contends that the bond premium was $15,747, but it was charged $100,000. It further alleges that Kennedy and Keeton falsely stated in a document that Keeton was the general engineering contractor for Newport's project. The document was "transmitted by wire and mail" to the County of Alameda and Federal Insurance Company in May 2004, June 2007, and August 2008 to obtain and renew the performance bond. Finally, Newport claims that Kennedy entered into the bankruptcy settlement agreement "with no intent to perform," but instead to "fraudulently induce" Newport and "others" into supporting the plan.

While Newport contends that the above acts violate RICO, only enumerated predicate acts constitute "racketeering activity" under the statue. § 1961(1). Newport does not explicitly state the theory under which it brings its RICO claim. Based on its characterization of Kennedy as a fraudulent enterprise, its allegations are at least grounded in fraud. As such, it must comport with the heighted pleading standard imposed by Rule 9(b). *See Vess*, 317 F.3d at 1103. Newport's contentions, however, fail to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). With respect to the interest rate of the original loan and the performance bond premium, the complaint lacks factual allegations of who made specific false statements, to whom, when, and other circumstances surrounding the fraud. As for falsely stating that Keeton was Newport's contractor, Newport does not explain how these statements made to third parties

defrauded it. Finally, Newport's claim that Kennedy misrepresented that it would perform the settlement agreement when it had no intention to do so is wholly conclusory.

Newport's assertions fail to establish other required elements of a RICO claim, as well. For a section 1964(c) claim, an "enterprise" is a distinct entity from the RICO defendant whose conduct gives rise to civil liability. *See Rae v. Union Bank*, 725 F.2d 478, 481(9th Cir. 1984). In other words, Kennedy by itself does not constitute an enterprise for purposes of Newport's RICO claim. The only other entity mentioned is Keeton, which Newport describes as "a shill contractor used as part of the unlawful enterprise." That allegation, apparently the sole support for Newport's assertion that an enterprise exists, falls short of providing a plausible basis for its RICO claim.

Additionally, Newport's allegations of a pattern of racketeering activity are insufficient. In order to establish a pattern, a plaintiff must show "that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). Newport complains of several acts over a period of years, but all were allegedly undertaken to defraud it out of the Pleasanton property. A pattern, however, requires more than one scheme with a "single purpose which happen[s] to involve more than one act . . . to achieve that purpose." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (distinguishing "a single episode" involving a number of acts from "a series of separate, related acts"). Furthermore, Newport cannot establish "continued" criminal activity by reference to multiple acts affecting only the Pleasanton project. *See id.* at 1936 (explaining "predicate acts designed to bring about a single event . . . [do] not pose a threat of continuity"). Newport states that it "is informed and believes" that the accused enterprise has "damaged numerous parties" in the United States. This general accusation provides no support for Newport's contention that Kennedy engages in a pattern of racketeering activity. In sum, Newport fails to plead sufficiently the elements of a RICO claim. Kennedy's motion to dismiss counter-claim three is granted with leave to amend.

C.   Fraud

In counter-claim four, Newport asserts that Kennedy made fraudulent misrepresentations. In California, a plaintiff averring fraud must plead five elements: (1) a false statement; (2) knowledge

of falsity (*i.e.*, scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). Newport relies on the same facts alleged in its RICO claim above. In particular, Newport contends that Kennedy fraudulently entered into the settlement agreements with the intent not to perform. For the reasons previously discussed, Newport fails to satisfy the pleading requirements of Rule 9(b) for the alleged acts of fraud. Therefore, counter-claim four is dismissed with leave to amend.

D.   Defamation and False Light

For counter-claims five and six, Newport raises defamation and false light invasion of privacy. According to Newport, Kennedy and Keeton made false statements in obtaining a performance bond for Newport's development project. Specifically, Kennedy and Keeton submitted a document to the County of Alameda and Federal Insurance Company that Newport alleges falsely stated Keeton was Newport's general engineering contractor. Newport also contends that Kennedy "twice sent an agent" to the subdivision who made false statements about Newport's ownership of the property. The agent allegedly claimed that the property was in foreclosure and Newport did not possess title to transfer.

In California, libel and false light have "largely collapsed" into the same claim. *Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979, 987 (9th Cir. 2002). The two torts are distinct, however, in that false light involves an invasion of privacy, not just harm to reputation. *Id.* ("The right of privacy concerns one's own peace of mind, while the right of freedom from defamation concerns primarily one's reputation."). Furthermore, California recognizes the common law right to privacy as an individual right. *See, e.g., Ion Equipment Corp. v. Nelson*, 110 Cal. App. 3d 868, 878-79 (1980) ("[T]here are no California cases recognizing that a corporation enjoys the right of privacy."). In this case, counter-claimant Newport is a limited liability company. As commonly understood, a corporation, and by analogy a LLC, is not susceptible to the injured "feelings" associated with invasion of privacy torts. *See id.* at 878. With respect to defamation, however, "there is no distinction between the protectible interest in reputation of corporations and individuals." *Vegod Corp. v. Am. Broad. Cos.*, 25 Cal. 3d 763, 770 (1979) (internal quotation marks

and citations omitted). Thus, as a LLC, Newport cannot state a claim for false light, although it may allege defamation for harm to its reputation.

Defamation encompasses both libel and slander. Cal. Civ. Code § 44. Libel is defined, in relevant part, as a false, unprivileged publication by writing, "which has a tendency to injure [any person] in his occupation." § 45. Libel that defames the plaintiff without the need for any explanation constitutes "libel on its face." § 45a. Defamation that is not libelous on its face requires proof of special damage in order to state a claim. *Id.*; § 48a(4)(b) (defining special damage as damage with respect to "property, business, trade, profession or occupation"). Similarly, slander includes a false, unprivileged publication that is orally uttered which tends "directly to injure [plaintiff] in respect to his office, profession, trade or business by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits." § 46. Thus, Newport's defamation counter-claim more precisely consists of a libel claim for the document submitted in obtaining the performance bond and a slander claim for the alleged statements made to real estate professionals.

While defamation is not subject to the heightened pleading standard of Rule 9(b), Newport still must allege facts sufficient to state a "plausible claim for relief." *See Iqbal*, 129 S. Ct. 1950. With respect to the performance bond, Newport states that Kennedy and Keeton made false statements. It is unclear what statements Kennedy allegedly made versus Keeton or, alternately, why any statement made by Keeton provides the basis for Kennedy's liability. Furthermore, Newport asserts that it is entitled to "damages per se." The allegedly libelous statement, however, is that Keeton was "the general engineering contractor performing the work for Newport." Newport claims that the statement "caus[ed] the County of Alameda to investigate the issue regarding the bond." These allegations are insufficient to plead either libel on its face or special damage. With respect to the alleged statements made to the real estate professionals, the cross-claim presents conclusions rather than factual allegations of Kennedy's involvement. The counter-claim fails to allege, for example, who made the statements, to whom they were made, and the speaker's relationship to Kennedy. Accordingly, Kennedy's motion to dismiss is granted without leave to amend the false light claim, but with leave to amend the defamation claim.

E.      Interference with Prospective Economic Advantage

In its seventh counter-claim, Newport alleges interference with prospective economic advantage. The elements of this tort include: "(1) an economic relationship between the plaintiff and some third party; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (internal quotation marks and citations omitted). Newport relies on the same allegations raised for its defamation and false light counter-claims above. It contends that the statements made to real estate professionals "unreasonably interfered" with its ability to sell its real property through its "existing and prospective economic relationships." Furthermore, Newport claims that the statements made in obtaining the performance bond caused the County of Alameda "to investigate the issue regarding the bond," thereby harming its "beneficial relationship" with the County.[3]

Newport's vague statements, however, do not satisfy the notice pleading standard of Rule 8(a)(2). Regarding the statements made to real estate professionals, Newport has not alleged facts demonstrating an economic relationship with a third party of which Kennedy had knowledge. In the case of the performance bond, Newport vaguely avers that a "beneficial" relationship existed between it and the County of Alameda. Because these statements fail to identify any specific, third-party economic relationship, it is impossible to find that Newport sufficiently pled the remaining elements of the tort either, *i.e.*, acts designed to disrupt the relationship, actual disruption, and economic harm proximately caused by defendant's acts. Thus, in both instances, Newport fails to state a claim for interference with prospective economic advantage. Kennedy's motion to dismiss counter-claim seven is granted with leave to amend.

F.      Unfair Business Practice

In counter-claim eight, Newport contends that Kennedy engaged in unfair business practices in violation of California's Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code § 17200.

---

[3] Newport's counter-claim states that "the beneficial relationship of Counter-defendant with the County of Alameda" was harmed, but the Court assumes Newport intends to refer to its own relationship with the County.

Under the UCL, "unfair competition" is broadly defined to include "any unlawful, unfair or fraudulent business act or practice." *Id.* Each of the three prongs provides a distinct basis of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). In this case, Newport's UCL counter-claim is grounded in fraud. It contends that Kennedy's "fraudulent schemes," which were designed to deprive it of "funds and property," constitute unfair business practices. Thus, counter-claim eight is subject to the requirement of Rule 9(b) that fraud claims be plead with particularity. *See*, *e.g.*, *id.* at 1125. As explained above, Newport's fraud allegations are insufficient to state a claim for relief so the UCL claim, premised on the same underlying alleged fraud, is similarly deficient. Thus, the motion to dismiss is granted with leave to amend.

## IV. CONCLUSION

Kennedy's motion to dismiss counter-claims two through eight is granted. With the exception of the false light and declaratory relief claims, the counter-claims are dismissed with leave to amend. The false light and declaratory relief claims are dismissed without leave to amend. Newport must file any amended complaint within 20 days from the date of this order.

IT IS SO ORDERED.

Dated: 11/01/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE